**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3469
_____

MICHAEL RAGO;
PATRICIA RAGO,
husband and wife,

                          Appellants

v.

CITY OF PITTSBURGH; MARGARET LANIER,
Treasurer for the City of Pittsburgh, in her Official Capacity;
RICHARD FEES
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:08-cv-01423)
District Judge:  Hon. Joy Flowers Conti

Submitted Under Third Circuit LAR 34.1(a)
May 11, 2011

Before:  SMITH, CHAGARES, and VANASKIE, <u>Circuit</u> <u>Judges</u>.

(Filed: June 1, 2011)

_____

OPINION
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Michael and Patricia Rago appeal from the District Court's grant of summary judgment in favor of the City of Pittsburgh and the individual defendants. For the reasons set forth below, we will affirm.

I.

Because we write solely for the benefit of the parties, we will only briefly recite the facts. The Ragos owned property in Pittsburgh, located at 41-43 Craighead Street, that they rented to tenants. While living in Pittsburgh, the Ragos received tax bills from both the City of Pittsburgh and the County of Allegheny at their Pittsburgh address of 891 Fredericka Drive. In 2003, the Ragos moved to Florida. Although through the year 2004 the City of Pittsburgh sent the Ragos' tax bill to their Florida address and after 2004 the City of Pittsburgh continued to communicate with the Ragos at their Florida address regarding code violations and sanitation repairs, the tax bills started to be sent to James Krupa at his Pittsburgh address of 4708 Brownsville Road in 2005.

In 1997, the Ragos and Krupa had entered into an unrecorded contract under which Krupa would eventually become the owner of the property at 41-43 Craighead Street. Over the course of years that Krupa was paying the Ragos for the property, the parties agreed that the taxes would continue to be paid by the Ragos, but that Krupa would subsequently reimburse them for these expenditures. Prior to 2007, this contract had been breached and was void. Despite this fact, it appears that Krupa paid the taxes on the property in 2005 and 2006, but did not pay the taxes in 2007.

2

Due to the delinquent taxes, the City of Pittsburgh moved to sell the 41-43 Craighead property at a treasurer's auction, and, following its policy, sent a letter via certified mail to the address contained in the County of Allegheny's tax records. As of July 19, 2004, the billing address for the County of Allegheny was Krupa's address of 4708 Brownsville Road, despite the fact that the tax bills were still addressed to the Ragos and they allege that they had no knowledge that the address on file was changed. Krupa signed for the certified mail, addressed to the Ragos, containing the notice of sale. When the receipt was returned, the City either failed to review the signature or failed to realize that the signature did not match the name of the addressees. The City also posted the sale in the Pittsburgh Post Gazette and the Pittsburgh Law Journal on two occasions, and posted a notice of sale on the porch of the 41-43 Craighead property. The house was sold at auction on August 17, 2007. The Ragos maintain that they had no idea that the property was sold until after the redemption period had expired.

The Ragos filed suit in the District Court, alleging a Due Process violation and naming as defendants the City of Pittsburgh, the current Treasurer for the City of Pittsburgh, and the former Treasurer for the City of Pittsburgh. The District Court granted summary judgment in the defendants' favor, concluding that "the City's system of effecting notice to interested parties is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Appendix ("App.") 19. The Ragos appealed the District Court's conclusion that the City's policy was adequate to provide notice.

II.

3

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1331 and this Court has jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the grant of summary judgment. Pichler v. UNITE, 542 F.3d 380, 385 (3d Cir. 2008). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

III.

The Ragos contest the District Court's conclusion that the City's policy was reasonably calculated to provide notice. They contend that the means chosen to provide notice must be reasonably expected to provide actual notice, and state that the balancing test set forth by Mathews v. Eldridge, 424 U.S. 319 (1976), should guide our inquiry into the appropriateness of the notice chosen. The Ragos concede that sending a letter via certified mail has been held sufficient to meet the standards of the Due Process Clause, Dusenbery v. United States, 534 U.S. 161 (2002), but assert that the City of Pittsburgh's policy for ascertaining the address to which the certified mail should be sent is deficient.

We disagree that Mathews supplies the framework for our analysis in this case. Instead, the applicable framework for our analysis is set forth by Dusenbery and Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950). As the Supreme Court noted, "we have never viewed Mathews as announcing an all-embracing test for deciding due process claims. Since Mullane was decided, we have regularly turned to it when confronted with questions regarding the adequacy of the method used to give notice." Dusenbery, 534 U.S. at 168. Our question, therefore, is whether "the notice in this case [was] 'reasonably calculated under all the circumstances' to apprise petitioner of the

4

pendency of the [loss of property]." Id. Unfortunately for the Ragos, in the present case, it was.

As a general proposition, the use of certified mail is sufficient to provide notice, id. at 169, but the Ragos urge us to conclude that the details of the City of Pittsburgh's specific policy make it an exception to this general rule. The City of Pittsburgh did not send a letter by certified mail to every address that might possibly have an interest in the property, as was the case in Dusenbery, id. at 164; instead, the City used only one address, which was from a list that was maintained by another government agency and could be altered by any person, even without the property owner's consent. Despite these facts, the only evidence in the record is that the City has a policy of reviewing every certified mail receipt to ensure that the person who signed for the mail is the same as the person to whom the mail is addressed, and if the signature does not match the addressee's name, more steps will be undertaken to determine the proper address. App. 135-38. The Ragos introduce no evidence that this was not the City's policy or that it was the City's practice to ignore this policy, and instead attempt to rely on the fact that no further steps were taken in this case despite the fact that the signature did not match either addressee's name. A municipality cannot be held liable under §1983, however, unless the constitutional violation was due to the enforcement of a municipal policy or practice. City of St. Louis v. Praprotnik, 485 U.S. 112, 122-23 (1988). That one individual did not follow a municipal policy in a single circumstance is insufficient to allow liability to attach to the municipality. Because the Ragos produced no evidence that anything other than a one-time failure to follow municipal policy occurred, the District Court

appropriately granted summary judgment. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (requiring that a party raise more than "some metaphysical doubt" in order to survive summary judgment).

The Ragos also urge that we find the City's policy deficient because even if we accept that all signatures are reviewed, the City does not maintain any record of landowners' signatures to which it can compare the signatures on the certified mail receipts. This argument is unpersuasive. Certainly a policy of sending a letter via certified mail to an address maintained in tax files and ensuring that the name signed on the receipt is the same as the addressee is reasonably calculated to provide notice. Although having some comparator to ensure that no forgeries occur may provide an even more accurate form of notice, "the Due Process Clause does not require . . . heroic efforts by the Government; it requires only that the Government's effort be 'reasonably calculated' to apprise a party of the pendency of the action; '[t]he criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements.'" Dusenbery, 534 U.S. at 170-71 (quoting Mullane, 339 U.S. at 315). As discussed above, the policy in this case was reasonably calculated to provide notice, and we will not reverse the District Court's grant of summary judgment merely because the Ragos have suggested a way that the policy could be strengthened.

Finally, the Ragos contend that the City's policy is deficient because it only sends notice to one address, and, therefore, cannot be reasonably calculated under all circumstances to provide notice to all parties in interest. That the Ragos can conceive of some set of facts under which the City's policy would not be reasonably calculated to

provide notice, however, is irrelevant. Our inquiry is only into whether the policy is reasonably calculated to provide notice to the parties before us in this case, and we conclude that it was. The City sent a letter by certified mail to the address on file with the County of Allegheny tax bureau. The mail was accepted and a signed receipt returned. It was the City's policy to review these signatures and conduct a further investigation into the appropriate address if the signature did not match the address. This is not a situation in which there were joint owners scattered across the country and notice was only sent to one, and we have no difficulty in concluding, based upon the record evidence introduced before the District Court, that the City of Pittsburgh's policy was reasonably calculated to provide notice to the Ragos.

## IV.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of the City of Pittsburgh.